IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Hartle et al.,
    Plaintiffs,
  v.                                Civil Action No. 08-1019
FirstEnergy Generation Corp.,
    Defendant.

Patrick et al.,
    Plaintiffs,
  v.                                Civil Action No. 08-1025
FirstEnergy Generation Corp.,
    Defendant.

Price et al.,
    Plaintiffs,
  v.                                Civil Action No. 08-1030
FirstEnergy Generation Corp.,
    Defendant.

**MEMORANDUM OPINION**

CONTI, Chief District Judge

## I.   Introduction

Before the court are expert challenges in three cases consolidated for discovery, *Hartle v. FirstEnergy Generation Corp.* (No. 08-1019), *Patrick v. FirstEnergy Generation Corp.* (No. 08-1025), and *Price v. FirstEnergy Generation Corp.* (No. 08-1030). These cases involve the Bruce Mansfield Power Plant ("Bruce Mansfield"), a coal-fired electric generating facility located along the Ohio River in Shippingport, Pennsylvania. Bruce Mansfield is owned and operated by defendant FirstEnergy Generation Corporation ("FirstEnergy" or "defendant"). The plaintiffs allege harm from air pollution discharged by Bruce Mansfield. The alleged pollution came in the form of "white rain," a chronically discharged corrosive material, and

"black rain," a dark-colored sooty residue discharged on two occasions in 2006 and 2007. The white rain and black rain were deposited on the area surrounding Bruce Mansfield, allegedly causing property damage and adverse health effects. The plaintiffs in *Hartle* are two parents seeking damages for adverse health effects sustained by their minor daughter. The named plaintiffs in *Patrick* are four couples who make class-action claims for damages due to diminution of property value and seek to enjoin the plant from operating until it can prevent the white rain emissions. In *Price*, nineteen plaintiffs seek monetary damages for adverse health effects and property damage and seek injunctive relief.

The parties conducted extensive fact and expert discovery in these cases. Defendant filed motions to limit or preclude the testimony of twelve of plaintiffs' experts. Plaintiffs filed motions to limit or preclude the testimony of seven of defendant's experts. This memorandum opinion addresses experts offering opinions about Pennsylvania environmental statutes and regulations. Plaintiffs' expert Gary Brown ("Brown") opined that Bruce Mansfield violated a number of statues and regulations by emitting pollutants and failing to adhere to permitting and reporting requirements. Defendant's rebuttal expert Joseph P. Pezze ("Pezze") opined that the alleged conduct identified by Brown did not violate the applicable regulations and statutes. Plaintiffs' expert Fred P. Osman ("Osman") submitted opinions in rebuttal to Pezze. Each party moved to preclude the opposing party's experts.[1]

---

1  The motions to preclude the opinions of Brown are ECF No. 128 (*Hartle*), ECF No. 166 (*Patrick*), and ECF No. 105 (*Price*). Brown also offered opinions, challenged by defendant, about sampling conducted on plaintiffs' properties. The court will address the sampling aspects of Brown's report in a separate memorandum opinion. The motions to limit the opinions of Pezze are ECF No. 118 (*Hartle*), ECF No. 196 (*Patrick*), and ECF No. 97 (*Price*). The motions to preclude the opinions of Osman are ECF No. 131 (*Hartle*), ECF No. 177 (*Patrick*), and ECF No. 124 (*Price*). Unless otherwise noted, ECF numbers appearing in the text of this opinion refer to the *Patrick* case, No. 08-1025.

During the hearing on these motions, the court indicated, as a preliminary assessment, that expert testimony about the ultimate issues whether or not defendant was negligent or violated statues or regulations would not be helpful to the trier of fact. (Hr'g Tr. 72:11–14, Feb. 4, 2014, ECF No. 277.) The court explained, however, that expert testimony explaining the nature of the statute or regulatory scheme may be relevant and helpful, particularly if violation of a statute constituted negligence per se. (*Id.* 72:14–22, 84:25–85:13.) The court asked the parties to submit briefs about whether a violation of the statutes or regulations discussed by the parties' experts can constitute negligence per se. After reviewing the briefing, the court finds that although the negligence per se doctrine is not applicable to these cases, limited background testimony explaining the nature of the applicable regulations may be helpful to the jury.

**II. Legal Standards**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under the seminal case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), district courts must act as gatekeepers to

"ensure that any and all scientific testimony or evidence admitted is … reliable."[2] *Id.* at 589. The United States Court of Appeals for the Third Circuit explained that Rule 702 "embodies a trilogy of restrictions" that expert testimony must meet for admissibility: qualification, reliability and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The admissibility of the regulatory opinions at issue turns on the fit or helpfulness prong.

The Rule 702 requirement that testimony "help the trier of fact to understand the evidence or to determine a fact in issue" is called the "fit" requirement. Fit requires that there be a "connection between the scientific research or test result to be presented and particular disputed factual issues in the case." *Paoli II*, 35 F.3d at 743. "'Fit is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes.'" *Id.* (quoting *Daubert*, 509 U.S. at 591). The standard for fit is "not that high," although it is "higher than bare relevance." *Id.* at 745.

Courts often exclude as unhelpful expert opinions that involve legal conclusions or "do nothing more for the jury than tell it what verdict to reach." Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6264 (2d ed. 1997). The Court of Appeals for the Third Circuit explained that although a district court "has discretion to determine whether expert testimony will help the trier of fact," in exercising that discretion,

> the District Court must ensure that an expert does not testify as to the governing law of the case. Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that "embraces an ultimate issue to be decided by the trier of fact," an expert witness is prohibited from rendering a legal opinion. Such testimony is

---

2  While *Daubert* applied exclusively to scientific testimony, *see Daubert*, 509 U.S. at 590 n.8, the Supreme Court subsequently extended the district court's gatekeeper function to all expert testimony. *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

4

> prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury.

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (footnote omitted) (citation omitted). Expert testimony concerning the customs and practices of a particular industry is admissible as long as the expert does not give an opinion as to what is required under the law or whether a party complied with the law. *Id.* at 218. Background information about a statute or regulation may be helpful to the jury. *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (holding that expert testimony about the general background of federal securities regulation was admissible as long as "carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it").

## III. Discussion

The testimony of Brown, Pezze, and Osman will be admitted for the limited purpose of providing the jury with the relevant background about the statutes and regulations governing the operation of the pollution control systems at Bruce Mansfield.[3] This background may be helpful to the jury's understanding about whether a statute or regulation was violated. The experts may not, however, offer opinions that FirstEnergy did or did not violate any statute or regulation and may not opine that FirstEnergy breached its duty of care. Such testimony would infringe upon the court's duty to explain the law to the jury and the jury's duty to determine the facts.

### A. *Opinions Offering Legal Conclusions*

Brown submitted an expert report ("Brown Rep.") dated August 6, 2012. Brown opined that Bruce Mansfield violated and continues to violate provisions of the Pennsylvania Air Pollution Control Act ("APCA"), 35 PA. STAT. §§ 4001–4106,

---

3  By "relevant background" the court means testimony explaining the nature of regulations and their relationship to a statute and any scientific or technical terms or concepts that may be unfamiliar to the jury.

5

and Solid Waste Management Act ("SWMA"), 35 Pa. Stat. §§ 6018.101–.1003. Specifically, Brown offered the following opinions:

1. The emission of white rain by Bruce Mansfield violated Pennsylvania Department of Environmental Protection ("Pennsylvania DEP") regulations implementing the APCA. (Brown Rep. 67, ECF No. 169-1.)

2. Bruce Mansfield violated permit requirements by emitting white rain, which is a "residual waste" under Pennsylvania DEP regulations implementing the SWMA. (*Id.* at i.)

3. FirstEnergy failed to report white rain discharge as a "residual waste" under Pennsylvania DEP regulations implementing the SWMA. (*Id.* at 67.)

4. The black rain incidents violated Pennsylvania DEP regulations implementing the APCA. (*Id.* at 35.)

5. FirstEnergy failed to report, delineate, and remediate the black rain residue despite Pennsylvania DEP requirements. (*Id.* at 72.)

6. FirstEnergy did not adhere to "Good Engineering Practice" as required by its operating permit under Pennsylvania DEP regulations implementing the APCA. (*Id.* at 10.)

7. FirstEnergy failed to inform the Pennsylvania DEP of changes to Bruce Mansfield as required by regulations. (*Id.* at 51.)

8. White rain constitutes a nuisance and a trespass. (*Id.* at 71.)

9. FirstEnergy unreasonably operated Bruce Manfield's air emissions control systems and failed to meet the applicable standard of care. (*Id.*)

These statements are legal opinions and must be precluded for that reason. *Berckeley*, 455 F.3d at 218; s*ee FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*, 695 F. Supp. 2d 216, 221–22 (W.D. Pa. 2010) (excluding testimony of copyright law expert who opined about whether the parties complied with statutory

requirements). Pezze's opinions rebutting Brown's conclusions and Osman's opinions rebutting Pezze and agreeing with Brown similarly must be limited.

### B. Opinions Explaining Relevant Regulations

Expert testimony explaining a statute or regulation may be helpful to the jury under certain circumstances. For example, under the doctrine of negligence per se, the violation of a statute constitutes negligence as a matter of law. For this doctrine to apply, the statute or regulation must be intended, at least in part, to protect the interests of a particular group, rather than the public generally. *Mest v. Cabot Corp.*, 449 F.3d 502, 518 (3d Cir. 2006); *Wagner v. Anzon, Inc.*, 684 A.2d 570, 574 (Pa. Super. Ct. 1996). Under Pennsylvania law, where the doctrine of negligence per se does not apply to a statute, violation of the statute may in some cases still be considered by a jury as evidence of negligence. *See, e.g.*, *Wood v. Smith*, 495 A.2d 601, 607 (Pa. Super. Ct. 1985) (Wieand, J., concurring). The court will apply these principles to the APCA and SWMA to determine whether expert testimony about their background would be helpful to the trier of fact.[4]

#### 1. APCA

The Court of Appeals for the Third Circuit found that violation of the APCA cannot support a claim of negligence per se. *Mest*, 449 F.3d at 518. The court of appeals explained:

> To assert a claim for negligence per se, the plaintiffs must demonstrate that: 1) the statute or regulation clearly applies to the conduct of the defendant; 2) the defendant violated the statute or regulation; 3) the violation of the statute proximately caused the plaintiff's injuries; and 4) the

---

4   In addition to the APCA and SWMA, plaintiffs briefed the application of the doctrine of negligence per se to the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 PA. STAT. §§ 6020.101–.1305. Neither Brown nor Osman made any reference to the HSCA in his report. Consequently, neither will be permitted to opine about this statute, and the court need not address the application of these principles to it.

7

statute's purpose is, at least in part, to protect the interest of
the plaintiff individually, as opposed to the public.

*Id.* Because the purpose of the APCA is to "protect[] the general public rather than the plaintiffs in particular," the plaintiffs' claims for negligence per se failed. *Id.*

In some cases, violation of a statute or regulation that does not support a claim of negligence per se can nevertheless be evidence of negligence.[5] For example, the Pennsylvania Supreme Court explained that violation of a municipal ordinance is evidence of negligence, but does not constitute negligence per se. *Jinks v. Currie*, 188 A. 356, 358 (Pa. 1936). Pennsylvania courts have found that violation of regulations under the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. §§ 651–678, and violation of standards promulgated by the American National Standards Institute are evidence of negligence. *Brogley v. Chambersburg Eng'g Co.*, 452 A.2d 743, 746 (Pa. Super. Ct. 1982); *Wood*, 495 A.2d at 603; *see id.* at 607 (Wieand, J., concurring) ("A failure to comply with OSHA regulations is not negligence per se, but it is some evidence of negligence.").

In *Rolick v. Collins Pine Co.*, 975 F.2d 1009 (3d Cir. 1992), the Court of Appeals for the Third Circuit reversed a district court's ruling precluding expert testimony about the standard of care in OSHA regulations applicable to the logging industry. After reviewing Pennsylvania law, the court of appeals determined that violation of an OSHA regulation was not negligence per se, but found it was appropriate "to 'borrow' the OSHA regulation for use as evidence of the standard of care owed to plaintiff." *Rolick*, 975 F.2d at 1014 (citing *Brogley*, 452 A.2d at 476). The district court abused its discretion by excluding this evidence. *Id.*

---

5      Pennsylvania law is not entirely clear on this topic. *See* 2 Pa. Suggested Standard Civil Jury Instructions § 13.80 subcommittee note (4th ed. 2011) ("The effect of a violation of a statutory mandate had been described by the Pennsylvania appellate courts in a variety of ways, leaving the trial judge in an uncertain and confused position . . . . Expressions such as 'presumption of negligence,' 'inference of negligence,' 'prima facie negligence,' and 'evidence of negligence' appear frequently and irregularly in opinions.").

The court finds the APCA regulations that the experts propose to testify about distinguishable from the OSHA regulation at issue in *Rolick*. The purpose of OSHA is to secure safe working conditions for a particular group—"every working man and woman." 29 U.S.C. § 651. The specific regulation at issue in *Rolick* was designed to protect workers in the logging industry.[6] In contrast, the APCA is designed to protect the general public. 35 Pa. Stat. § 4002(a) (declaring that the purpose of the act is, among other things, to protect the "public health, safety and well-being of [Pennsylvania's] citizens"); *Mest*, 502 F.3d at 518 ("We conclude that … the [APCA] is an environmental statute governing air quality with the purpose of protecting the general public rather than the plaintiffs in particular."); *see also Levin v. Dollar Tree Stores, Inc.*, Civil No. 06-605, 2006 WL 3538964, at *3 n.2 (E.D. Pa. Dec. 6, 2006) (finding that an alleged violation of the Americans with Disabilities Act, an antidiscrimination rather than public health and safety statute, could not be used as evidence of negligence and deeming *Rolick* inapposite ).

The court is hard pressed to understand how certain violations of the APCA could be relevant to the standard of care required in these cases. For example, the reporting requirements of the APCA might not implicate any duty owed to plaintiffs. The court, however, cannot determine that no evidence of a violation of the APCA would be relevant to the standard of care applicable to a duty owed to plaintiffs. Should plaintiffs introduce evidence that defendant violated a relevant requirement of the statute, expert testimony explaining the regulatory scheme will be permitted. This expert testimony will be limited to an explanation of the meaning and background of the regulations. The jury alone must determine, based

---

6    The regulation at issue in *Rolick* provided as follows:

> Dead, broken, or rotted limbs or trees that are a hazard (widow-makers) shall be felled or otherwise removed before commencing logging operations, building roads, trails, or landing, in their vicinity.

29 C.F.R. § 1910.266(c)(3)(ii) (1991).

upon the facts, whether the regulation was violated and what weight to assign that finding in determining negligence.[7] The parties are directed to meet and confer about what regulations may implicate a duty owed to plaintiffs and to file with the court a notice listing which regulations they agree fall into that category and any regulations they do not agree upon. Upon submission of that listing, if there are disagreements, the court will hold a telephone conference to set a briefing schedule about the disputes.

   2. SWMA

A district court in this circuit recently held that a violation of the SWMA can serve as the basis of a claim for negligence per se. *Roth v. Cabot Oil & Gas Corp.*, 919 F. Supp. 2d 476, 489 (M.D. Pa. 2013). The district court in *Roth* relied on "the excellent analysis and reasoning set forth in" *Fallowfield Development Corp. v. Strunk*, Civil Nos. 89-8644, 90-4431, 1990 WL 52745 (E.D. Pa. Apr. 23, 1990). *Roth*, 919 F. Supp. 2d at 489. In *Fallowfield*, the court, in ruling on a motion to dismiss, stated that the legislative policy behind the SWMA "would be furthered by allowing violations of the SWMA … to serve as the basis for a claim of negligence per se." In later ruling on motions for summary judgment, the *Fallowfield* court clarified its previous statement:

> Further reflection reveals this statement might lead to the erroneous inference that the standards of reasonableness under the HSCA and SWMA have been adopted by this Court under the negligence per se theory. This would be a misstatement of the law. … The [SWMA] is intended to protect the health, safety and welfare of the community and not individuals seeking to recover pecuniary losses. The statute specifically permits the continued use of common

---

7   At the *Daubert* hearing, defendant raised the concern that some alleged violations occurred thirty or forty years ago. The court noted that some look-back period would be appropriate, but that forty years would be problematic. (Hr'g Tr. 91:24–92:2, Feb. 4, 2014, ECF No. 277.) This issue, however, is not currently before the court.

> law claims to further that interest. Accordingly, the negligence per se claim is dismissed.

*Fallowfield Development Corp. v. Strunk*, Civil Nos. 89-8644, 90-4431, 1991 WL 17793, at *8–9 (E.D. Pa. Feb. 11, 1991). The court in *Roth* was apparently unaware of this subsequent holding in *Fallowfield*.

This court concludes that the SWMA, like the APCA, is intended to benefit the public generally, not to protect the interest of a particular group. Accordingly, a violation of the SWMA does not give rise to a claim for negligence per se. *Fallowfield*, 1991 WL 17793, at *9 (dismissing negligence per se claim based upon SWMA); s*ee Mest*, 449 F.3d at 518 (affirming dismissal of negligence per se claim based upon violation of the APCA); *Wagner*, 684 A.2d at 575 (affirming dismissal of negligence per se claim based upon the Philadelphia Air Management Code).

In line with the court's findings with respect to the APCA, the jury may consider evidence of the violation of the SWMA as evidence of negligence. The parties' experts may explain the statute and its regulations, but may not offer an opinion that the statute was violated. Specifically, they may not testify that the white or black rain is or is not residual waste. The jury will decide that issue after receiving factual evidence, opinion evidence explaining the statute and its regulations, and instructions from the court about the law.

### C. Admissibility of Pezze's Testimony

Defendant's expert, Pezze, worked as an air quality regulator at the Pennsylvania DEP for more than twenty-five years. Plaintiffs argue that Pezze's opinions are inadmissible because they are based on personal knowledge from his employment with the Pennsylvania DEP and not independent expert knowledge. (ECF No. 197, at 5–6.) Plaintiffs assert that Pezze's opinions will confuse the jury because he blurs the line between a fact witness and expert witness. (*Id.* at 8.) The Pennsylvania DEP is not a party, and it has not authorized him to speak on its behalf. (*Id.* at 6–7.)

The concerns raised by plaintiffs are adequately addressed by limiting his expert testimony to general background information about the statutes and regulations at issue, and plaintiffs may elicit testimony from him that he is not speaking on behalf of the Pennsylvania DEP. Pezze, by virtue of his background and experience, is qualified to offer such general opinions.

## IV.     Conclusion

The motions to preclude the testimony of Brown, Pezze, and Osman will be granted in part and denied in part. As set forth above, the experts may not offer opinions containing legal or factual conclusions. To the extent violation of a statute or regulation is relevant to a claim in these cases, the experts may give testimony about the general background of the statute or regulation. Appropriate orders will be entered.

Dated: March 20, 2014                    /s/ Joy Flowers Conti
                                         Joy Flowers Conti
                                         Chief United States District Judge